UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
North American Specialty Insurance Company         Case No.:

                                 Plaintiff,         **COMPLAINT**
      v.

The Cherokee 8A Group, Inc., Cherokee Glass, Inc., J & A
Group Properties, Inc., John Hopka, and Irene Hopka
                                 Defendants.
------------------------------------------------------------------------x

Plaintiff, by its attorneys, Gottesman, Wolgel, Flynn, Weinberg & Lee, P.C., complaining of the Defendants, The Cherokee 8A Group, Inc. ("Cherokee"), Cherokee Glass, Inc. ("Cherokee Glass"), J & A Group Properties, Inc. ("J & A"), John Hopka, and Irene Hopka (collectively, the "Defendants"), hereby alleges as follows:

## The Parties

1. Plaintiff North American Specialty Insurance Company ("NAS") is a New Hampshire corporation duly licensed to issue surety bonds in the States of New York and New Jersey with its principal place of business located at 1200 Main Street, Suite 800, Kansas City, Missouri, 64105.

2. Upon information and belief, Defendant Cherokee is a New Jersey corporation with its principal place of business located at 135 Kinnelon Rd., Kinnelon, NJ 07405.

3. Upon information and belief, Defendant Cherokee Glass is a New Jersey company with its principal place of business located at 115 N. Main St., Wharton, NJ 07885.

4. Upon information and belief, J & A is a New Jersey company with its principal place of business located at 292 Whippany Road, Whippany, NJ 07981.

5. Upon information and belief, Defendant John Hopka is a resident of the State of New Jersey, residing at 292 Whippany Road, Whippany, NJ 07981.

6. Upon information and belief, Defendant Irene Hopka is a resident of the State of New Jersey, residing at 292 Whippany Road, Whippany, NJ 07981.

## VENUE AND JURISDICTION

7. This Court possesses diversity jurisdiction over this action pursuant to Title 28, United States Code, Section 1332(a)(1) because Defendants are citizens of the State of New Jersey, Plaintiff is a citizen of the State of Illinois, and the matter in controversy, exclusive of interests and costs, exceeds the sum or value of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

8. Venue is proper in this Court pursuant to Title 28, United States Code, Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

## FACTS

### The Bonds and Project

9. NAS, as surety, issued the following performance bonds and payment bonds (together, the "Performance Bond(s)," "Payment Bond(s)," and/or the "Bonds"), on behalf of and at the request of Cherokee in connection with construction contracts between Cherokee and the United States of America, naming Cherokee as Principal and the United States of America as Obligee, for the projects (each a "Project," and together, the "Projects") listed below:

|    | Bond No. | Date | Contract | Project |
|----|----------|------|----------|---------|
| a. | 2205142 | January 28, 2016 | W912DS-16-C-0005 | Steam to Gas Conversion USMA West Point, NY |
| b. | 2197407 | May 13, 2015 | MATOC VA243-I3-D-0158 | Renovate Radiology Suite |
| c. | 2211395 | June 27, 2016 | VA243-16-C-0118 | Historic Renovations Building 1 |

The Steam to Gas Conversion USMA West Point, NY was administered by the U.S. Army Corp of Engineers at West Point, NY. The Renovate Radiology Suite Project and the Historic Renovations Building 1 Project were administered by the U.S. Veterans Administration at its regional office in Bronx NY.

10. The Bonds were made, executed, and delivered by NAS, as surety, in consideration of and in reliance upon, amount other things, a written General Agreement of Indemnity executed, jointly and severally, by Defendants Cherokee, Cherokee Glass, J & A, John Hopka, and Irene Hopka on or about April 16, 2015 (the "Indemnity Agreement") in favor of NAS. A copy of the Indemnity Agreement is annexed hereto as Exhibit "A" and made a part hereof, with the reference to the individual Defendants' social security numbers redacted therefrom.

11. Under the Indemnity Agreement, the Defendants, jointly and severally agreed, among other things, to:

> [E]xonerate, hold harmless and indemnify the Surety from and against any and all Loss. For the purpose of this Agreement, Loss means any liability, loss, costs, damages, attorneys' fees, consultants' fees, and other expenses, including interest, which the Surety may sustain or incur by reason of or in consequence of, the execution of the Bonds (or any renewals, continuations or extensions). Loss includes but is not limited to the following: (a) sums paid or liabilities incurred in the settlement of claims; (b) expenses paid or incurred in connection with the investigation of any claims; (c) sums paid in attempting to procure a release from liability; (d) expenses paid or incurred in the prosecution or defense of any suits; (e) any judgments under the Bonds; (f) expenses paid or incurred in enforcing the terms of this Agreement; (g) sums or expenses paid or liabilities incurred in the performance of any Bonded contract or related obligation; and (K) expenses paid an recovering or attempting to recover Losses or expenses paid or incurred. Loss expressly includes attorney fees incurred in defending claims, protecting the Surety's interests an any bankruptcy or insolvency proceeding, arranging for the Surety's performance of its obligations, evaluating, settling, and paying claims, seeking recovery under the terms of this Agreement from the Indemnitors, and pursuing the Surety's common law rights to seek recovery of losses from others, including third parties. The Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Surety is construed toward its obligee or other claimants.

*See **Exhibit A***, Article 2.

12. Defendants are jointly and severally obligated to exonerate, hold harmless, and indemnify NAS and resolve all claims against NAS' aforesaid bonds, all without any loss, cost, or expense to NAS.

Payment of Bond Claims and Expenses

13. NAS reviewed and paid the following claims by parties claiming to be entitled to claim under the Payment Bonds for monies due and owing to them by Cherokee in connection with the Projects:

    a.    Renovate Radiology Suite Project (Bond No. 2197407)

| | | |
|---|---|---:|
| | i. HTS NY Inc | $35,442.50 |
| | ii. Central Door Service, Inc. | $6,740.00 |
| | iii. Delta Connects, Inc. | $35,171.77 |
| | iv. Oilco Heating Corp. | $9,558.27 |
| | v. Oilco Heating Corp. | $9,558.27 |
| | vi. Mechanical Testing Inc | $17,520.00 |
| | vii. Welded Products II, LLC | $5,754.30 |
| | viii. Welded Products II, LLC | $26,648.65 |
| | ix. Benco, Inc | $16,081.70 |
| | x. Abruzzi Electric Services Inc. | $79,643.27 |

    b.    Steam to Gas Conversion Project (Bond No. 2205142)

| | | |
|---|---|---:|
| | xi. Watson Engineering, PC | $12,956.32 |
| | xii. Abruzzi Electric Services Inc. | $111,435.00 |

|  |  |  |
|---|---|---|
|  | xiii. Rozell East, Inc. | $29,673.16 |
| c. | Historic Renovations Building 1 Project (Bond No. 2211395) |  |
|  | xiv. Integrity Roofing Inc. | $166,347.56 |
|  | xv. Alimi Builders | $50,000.00 |
|  | xvi. Alimi Builders, Inc. | $16,149.02 |
|  | xvii. Alimi Builders, Inc. | $6,638.62 |
|  | xviii. Banta Ironworks, Inc | $29,223.50 |
| d. | **TOTAL** | **$664,541.91** |

14. NAS additionally incurred over $50,076.57 in legal and consulting fees, costs, and expenses as a result of the claims received under the Bonds and in the prosecution of this action, and will continue to incur fees, costs, and expenses in connection with this matter, including in bringing and maintaining this lawsuit.

## COUNT I
**(Contractual Indemnification -Payment and Performance Bond Losses)**

15. NAS repeats and realleges each and every allegation set forth in paragraphs 1-14 herein as if again set forth in length.

16. Pursuant to the terms of the Indemnity Agreement, the Defendants, jointly and severally, agreed to exonerate, hold harmless, and indemnify NAS from and against all losses in connection with the Bonds.

17. NAS has incurred payment bond losses of not less than $664,541.91 as a result of having issued the Bonds.

18. By reason of the foregoing, Defendants are liable, jointly and severally, to indemnify NAS in the sum of at least $664,541.91, plus any additional losses for any payment and

performance bond claims and/or losses that NAS incurs after the date of the complaint for a sum not yet determined.

## COUNT II
### (Contractual Indemnification – Consultant and Attorney's Fees and Expenses)

19. NAS repeats and realleges each and every allegation set forth in paragraphs 1-18 herein as if again set forth in length.

20. As of the date of this Complaint, NAS has incurred fees, costs, and expenses, including but not limited to legal fees and expenses of $50,076.57, and will continue to, incur fees, costs, and expenses, including but not limited to legal fees and expenses, in connection with the Bonds and the Indemnity Agreement.

21. Pursuant to the terms of the Indemnity Agreement, the Defendants, jointly and severally, agreed to indemnify NAS for counsel and consultant fees and expenses incurred in connection with the Bonds, including, but not limited to, in investigating and settling claims, in the performance of any bonded contracts, and in enforcing the terms of the Indemnity Agreement.

22. By reason of the foregoing, Defendants are liable, jointly and severally, to NAS for all losses, costs, charges for consultants' and attorneys' fees and expenses that have been or will be incurred by NAS in connection with the issuance of the Bonds and/or this litigation, in an amount yet to be determined but not less than $50,076.57, plus interest.

## COUNT III
### (Exoneration)

23. NAS repeats each and every allegation set forth in paragraphs 1 through 22 of its Complaint as if set forth at length herein.

24. As between NAS and Cherokee, NAS is secondarily liable under the Bonds while Cherokee has primary liability and otherwise owes a duty to NAS to procure the discharge of all obligations arising under the Bonds.

25. NAS is entitled to be exonerated by Cherokee for any and all losses and expenses incurred in connection with the Indemnity Agreement, the contract, and the Bonds.

26. As a result of Cherokee's failure to honor its obligations arising under the Indemnity Agreement, the contract, and the Bonds, NAS has sustained and will continue to sustain losses and damages.

27. By reason of the foregoing, Defendants are liable, jointly and severally, to exonerate NAS for claims and loss adjustment expenses that NAS has incurred or may incur, plus those claims and loss adjustment expenses incurred by NAS after the date of this Complaint.

## COUNT IV

### (Subrogation)

28. NAS repeats each and every allegation set forth in paragraphs 1 through 27 of the Complaint as if set forth at length herein.

29. As a result of having executed the Bonds, and as a result of the default of Cherokee under its contract for which the Bonds were furnished, NAS has been required to make payments to satisfy the obligations of Cherokee to subcontractors and suppliers of Cherokee, including by evaluating, investigating, and settling bond claims.

30. As a result of the foregoing, NAS has sustained damages, and it is likely to sustain additional damages, not less than the amount of $714,618.48.

31. To the extent that NAS has made, or will make, payments to extinguish Cherokee's debts and obligations, NAS is subrogated to the rights of said persons or entities whose claims it

has or will settle by making payments in connection with the Bonds in an amount not less than $714,618.48.

## COUNT V
### (Quia Timet)

32. NAS repeats each and every allegation set forth in paragraphs 1 through 31 of the Complaint as if set forth at length herein.

33. Upon information and belief, the Defendants are each in a precarious financial condition and are incapable of meeting their contractual commitments.

34. NAS is fearful and apprehensive that the Defendants each are, or each may become, financially unable to reimburse NAS for the amounts it has or may be compelled to pay under the Bonds, including attorneys' fees and expenses.

35. NAS is fearful and apprehensive that the Defendants may, jointly or severally, conceal their property and assets or place same beyond NAS' reach, thereby making recovery from any of them difficult if not impossible, and causing NAS to suffer irreparable damage and loss through its inability to recover the amounts it has paid or may be compelled to pay in connection with the Bonds and Indemnity Agreement.

36. NAS has no adequate remedy at law and the declaratory and equitable relief sought herein constitutes the only means by which NAS can secure adequate relief and by which furtherance of justice may be served.

37. Upon information and belief, unless the relief in the nature herein is requested or its equivalent is granted, NAS' equitable rights will be lost, and it will suffer irreparable harm and damage.

38. The deposit of collateral is necessary to secure NAS against claims, losses and loss adjustments expenses pending the full and complete discharge of its liability under the Bonds.

The Court should direct the reimbursement of NAS for any and all amounts that it may be required to pay under the Bonds, including reimbursement of its own attorneys' fees and costs, and expenses; or in the alternative, (b) order the appointment of a receiver to receive and conserve the property and assets of the Defendants pending NAS' full exoneration and relief from liability under the Bonds, and reimbursement of any amounts NAS may be required to pay thereunder, including its own costs and loss adjustment expense; or, in the alternative (c) order the Defendants, jointly and severally, to exonerate and relieve NAS and hold NAS harmless from all liability, loss, cost, damage, and expenses by such other means and methods as the Court may deem just, reasonable, and feasible.

39. By reason of the foregoing, NAS is entitled to a declaratory judgment and equitable relief of *quia timet* and an order from the Court directing the Defendants to deposit with NAS or with the Clerk of this Court for the benefit and protection of NAS as Surety, an amount to be determined by the Court but not less than $714,618.48.

**WHEREFORE**, NAS demands judgment for entry of a money judgment against Defendants, jointly and severally:

1) On the **FIRST** Cause of Action for an amount not less than $664,541.91 for payment bond losses incurred by NAS in connection with the Bonds and the Indemnity Agreement, plus such additional surety bond losses incurred by NAS subsequent to the date of this Complaint in an amount to be determined;

2) On the **SECOND** Cause of Action for an amount not less than $50,076.57 for attorney and consulting fees, costs, and expenses incurred by NAS in connection with the Bonds, Indemnity Agreement, and in prosecuting this Action, plus such additional

amounts incurred by NAS subsequent to the date of this Complaint in an amount to be determined;

3) On the **THIRD** Cause of Action for judgment against the Defendants, jointly and severally, to exonerate NAS in an amount to be determined;

4) On the **FOURTH** Cause of Action for an amount not less than $714,618.48 to reimburse and make NAS whole for payments made by NAS to satisfy Cherokee's obligations to its subcontractors and suppliers to whose rights NAS is subrogated;

5) On the **FIFTH** Cause of Action, judgment granting NAS the equitable relief of *quia timet* and directing the Defendants, jointly and severally, to post and deposit collateral with NAS or in the alternative with the Court in the sum of $714,618.48 to indemnify NAS against potential losses to be incurred in connection with the Bonds;

6) All with due and proper interest thereon, together with the costs and disbursements of this action and such other and further relief as the Court deems just and proper.

Dated: January 5, 2021
New York, New York

                              **GOTTESMAN, WOLGEL, FLYNN,**
                              **WEINBERG & LEE, P.C.**

                        By: _____
                            Charlotte S. Licker, Esq.
                            Steven Weinberg, Esq.
                            11 Hanover Square, 4th Floor
                            New York, NY 10005
                            *Attorneys for Plaintiff*
                            *North American Specialty Insurance Company*
                            Telephone: (212) 495-0100
                            Facsimile: (212) 480-9797
                            Email: clicker@gottesmanlaw.com
                                    sweinberg@gottesmanlaw.com